UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUSSELL SMITHSON,<br><br>            Plaintiff,<br><br>    v.<br><br>SUZI PUCKETT, *et al.*,<br><br>            Defendants. | Case No. C19-1672-RAJ-MLP<br><br>REPORT AND RECOMMENDATION |

## I.     INTRODUCTION

This matter is before the Court on Defendants University of Washington and Ric Aguilar's (collectively, "UW Defendants") motion to dismiss Plaintiff's amended complaint (Am. Compl. (dkt. # 1-2)) pursuant to Federal Rule of Civil Procedure 12(c). (Mot. (Dkt. # 20).) Plaintiff submitted a response (Resp. (dkt. # 23)) and UW Defendants submitted a reply (Reply (dkt. # 24).) Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends Defendants' motion be granted and Plaintiff's RICO claim against UW Defendants be dismissed with prejudice.

## II. BACKGROUND

Plaintiff's amended complaint stems from his former employment with the Integrated Technologies Group, Inc. ("ITG"), owned by Defendants Suzi Puckett and Mark Sutton. (Am. Compl. (Dkt. # 1-2) at 1.) Plaintiff alleges Defendants Puckett and Sutton engaged in a tax fraud scheme by using fraudulent checks made payable to a fictitious company and further engaged in a *quid pro quo* agreement with Defendant Ric Aguilar from the University of Washington IT Department by employing Defendant Aguilar's children in exchange for construction contracts. (*Id.* at 4-5.) Plaintiff alleges that when he brought these alleged schemes and other workplace harassment conduct to the attention of his supervisor, Defendant Deborah Shatos, she denied his allegations and threatened him. (*Id.*) As a result, Plaintiff alleges he resigned, moved to Oregon, and attempted suicide. (*Id.* at 2, 6)

Plaintiff, proceeding *pro se*, originally filed a complaint for damages against Defendants Puckett, Sutton, and Shatos in the Snohomish County Superior Court. (Compl. (Dkt. # 2-1) at 26-28.) Plaintiff sought damages for pain and suffering from alleged negligence and hostile work environment. (*Id.* at 28.) Plaintiff subsequently filed an amended complaint for "RICO Civil Damages," adding Defendants Ric Aguilar and the University of Washington.[1] (*See* Am. Compl.)

Plaintiff asserts the predicate offenses to his Racketeer Influenced and Corrupt Organization Act ("RICO") claim are mail fraud, wire fraud, bribery, and tax fraud. (*Id.* at 1.) Plaintiff's amended complaint seeks damages for pain suffering pursuant to "State RICO statutes." (*Id.* at 7.) Plaintiff also seeks civil penalties to be made payable to the Snohomish

---

[1] Plaintiff's amended complaint also names Defendants Katherine Weber and Carol Sharrow. (*See* Am. Compl.) Defendants Weber and Sharrow were dismissed from the case pursuant to CR 12(b)(6). (Dkt. # 2-1 at 185-86.)

1  County Anti-Criminal Profiteering Revolving Fund. (*Id.* at 7.) Defendants removed this matter
2  pursuant to federal court pursuant to federal question jurisdiction, 28 U.S.C. §§ 1331 and 1441 in
3  October 2019. (Not. of Removal (Not. of Removal (Dkt. # 1).)

### III.    DISCUSSION

#### A.    Motion to Dismiss

The standard governing a Rule 12(c) motion for judgment on the pleadings is essentially the same as that governing a Rule 12(b)(6) motion. *Dworkin v. Hustler Magazine Inc.,* 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.").

To survive a motion to dismiss, Plaintiff's claims "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility if the party pleads factual content that "allows the Court to draw the reasonable inference that [the opposing party] is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It must contain "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 545.

#### B.    Pre-tort claim

UW Defendants first argue that to the extent Plaintiff's action seeks any tort claims, it should be dismissed because Plaintiff failed to file a pre-suit tort claim. (Mot. at 2, n.1; Reply at 1-2.) UW Defendants cite *Schoonover v. State,* 116 Wn. App 171 (2002) and RCW 4.92.100-110 in support of its argument. (Reply at 1-2.) Because the Court recommends Plaintiff's claims

REPORT AND RECOMMENDATION - 3

against UW Defendants be dismissed with prejudice, discussed below, the Court need not address this argument.

### C.     Racketeering Claims

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). To state a claim under 18 U.S.C. 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to the plaintiff's business or property." *Just Film, Inc. v. Bouno*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)). The fifth element is RICO's "standing" requirement. *See Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994). The statutory standing requirement ensures that "RICO is not expanded to provide a 'federal cause of action and treble damages to every tort plaintiff.'" *Id.* (quoting *Oscar v. Univ. Students Co-op Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) (en banc)). To prove injury to business or property, "plaintiffs must show proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086–87 (9th Cir. 2002).

UW Defendants' instant motion argues that Plaintiff lacks standing, failed to present sufficient factual allegations that there was an enterprise conducting a pattern of racketeering, and failed to allege a pattern or predicate acts to maintain his RICO action. (*See generally* Mot.) The Court addresses each argument in turn.

#### 1.     Standing

UW Defendants argue that Plaintiff's RICO action should be dismissed because Plaintiff lacks standing. (Mot. at 2.) Specifically, UW Defendants argue Plaintiff's amended complaint

fails to allege any injury to a business or property and instead only alleges damages for pain and suffering, the same damages alleged in Plaintiff's initial complaint for negligence and hostile work environment. (*Id.*) Plaintiff argues he has standing because he is "attempting to recover damages relating to lost wages and earning capacity as a result of the actions of the defendants." (Resp. at 2.) Plaintiff further appears to admit that his amended complaint contains deficiencies and proposes he should be granted leave to submit an amended pleading with a RICO case statement to address the issues raised in UW Defendants' motion to dismiss.[2] (*Id.* at 3.)

RICO confers standing only on a "person injured in his business or property by reason of a violation" of the statute. *See* 18 U.S.C. § 1964(c). Thus, a RICO plaintiff must be a "person" within the meaning of the statute, must claim an injury to "business or property," and must show that the defendants' RICO violation is the proximate cause of that injury. The Court will not recognize standing where a plaintiff merely alleges a loss of wages: "[O]ur approach does not create RICO liability for every loss of wages resulting from a personal injury." *Diaz v. Gates,* 420 F.3d 897, 900 (9th Cir. 2005).

Here, the Court finds Plaintiff lacks standing to assert a RICO claim. Plaintiff's amended complaint asserts that he was subjected to a hostile work environment and subsequently forced to "resign in protest" from his employment out of fear of retaliation. From the face of the pleadings, Plaintiff does not allege injury to a business or property. As noted by UW Defendants, Plaintiff's amended complaint seeks damages for pain and suffering, but does not assert damages relating to a business or property. (Am Compl. at 7.) Accordingly, the Court recommends Plaintiff's amended complaint be dismissed against UW Defendants for lack of standing.

---

[2] The Court notes Plaintiff's amended complaint already contains a purported RICO case statement in which it asserts the predicate offenses of mail fraud, wire fraud, bribery, and tax fraud, as noted above. (Am. Compl. at 1.)

REPORT AND RECOMMENDATION - 5

*2.     Enterprise*

UW Defendants also argue Plaintiff's amended complaint fails to allege that an "enterprise" existed. (Mot. at 4.) An enterprise "is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette,* 452 U.S. 576, 583 (1981). The enterprise need not have any particular organizational structure separate from its members or beyond that which is necessary to carry out its chosen course of conduct: it simply must function as an on-going, continuing unit. *Odom v. Microsoft Corp.*, 486 F.3d 541, 551–52 (9th Cir. 2007). This element of a RICO claim does not sound in fraud and need not be pled with particularity. (*Id.*) An enterprise that is not a legal entity is commonly known as an "association-in-fact" enterprise and does not require "any particular organizational structure, separate or otherwise." *Id.* at 551. To plead the existence of an association-in-fact enterprise, a plaintiff must allege (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009).

The Court finds Plaintiff does not allege that an enterprise existed with regard to UW Defendants. Plaintiff only alleges Defendant Aguilar had a "personal relationship" with Defendant Sutton and that Defendant Sutton's business employed Defendant Aguilar's children in exchange for construction contracts. (Am. Compl. at 2.) Plaintiff alleges these contracts were not properly bid to the public and that Defendant Aguilar received information regarding the contracts before they were official projects. (*Id.* at 2.) Plaintiff also appears to assert that Defendant Aguilar owned a P.O. Box that was sent allegedly fraudulent checks. (*Id.* at 5.) The Court finds that although Plaintiff has plausibly alleged some type of associate between Defendant Aguilar and Defendant Sutton, his allegations fall short of alleging an "enterprise."

1  Further, even if Plaintiff's allegation were sufficient to allege Defendant Aguilar was part of an
2  enterprise, his claims still fail due to lack of standing.

3              3.      *Predicate Acts*

4       UW Defendants further argue Plaintiff's alleged predicate acts of mail fraud, wire fraud,
5  bribery, and tax fraud are insufficient to sustain a RICO action. (Mot. at 4-6.) A "pattern of
6  racketeering activity" requires at least two acts of racketeering activity, commonly referred to as
7  predicate acts. *See* 18 U.S.C. § 1961(5). To constitute a "pattern" the predicate acts must be
8  "related" and "continuous." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).
9  The requirement that the predicate acts be "related" means that "they share similar purposes,
10 participants, victims, methods, or other distinguishing characteristics; in short they must not be
11 isolated or sporadic." *See Howard v. Am. Online, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000). Where
12 predicate acts are based in fraud, they must be pleaded with particularity. *Odom*, 486 F.3d at
13 553–54; *see also* Fed. R. Civ. P. 9(b). RICO recognizes mail fraud and wire fraud, among other
14 acts, to be "racketeering activity." *See* 18 U.S.C. § 1961(1)(B). The elements of mail fraud and
15 wire fraud include "(1) a scheme or an artifice to defraud; (2) use of the U.S. mails or wires in
16 furtherance of the said scheme; and (3) use of the mails or wires with the specific intent to
17 deceive or defraud." *ITI Internet Services, Inc. v. Solana Capital Partners, Inc.*, 2006 WL
18 1789029 *8 (W.D. Wash. June 27, 2006).

19      UW Defendants argue the allegations contained in Plaintiff's amended complaint are
20 unrelated and therefore fail to show a pattern of racketeering. (Mot. at 5-6.) They further assert
21 that because Plaintiff voluntarily left his job, he cannot allege "continued criminal activity."
22 (Mot. at 5-6 (citing *Turner v. Cook*, 362 F.3d 1219, 1129 (9th Cir. 2004)).) The Court agrees.
23 Plaintiff alleges: (1) a "quid pro quo" existed between Defendant Aguilar and ITG; (2) ITG

committed tax fraud; (3) Defendant Aguilar accepted checks at a P.O. Box; (4) ITG engaged in workplace harassment against him; (5) his former attorneys had an obligation to report his allegations to authorities; and (6) UW lacked oversight. (*See generally* Am. Compl.) These allegations are conclusory and fail to allege enough facts to allow the Court to construe them as elements of predicate acts. As an example, the only allegations regarding a tax fraud scheme are that ITG used checks made payable to fictitious companies that these checks purported to pay for business cards that were never distributed. (Am. Compl. at 4.) Such allegations are insufficient to sustain any claims of predicate acts regarding UW Defendants.

    4.    *Proximate Cause*

Lastly, UW Defendants argue Plaintiff's allegations fail to establish that their alleged wrong doing was the proximate cause of Plaintiff's injury. (Mot. at 6-8.) To maintain a cause of action under RICO, "a plaintiff must show not only that the defendant's violation was a 'but for' cause of his injury, but that it was the proximate cause as well." *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994). Proximate causation under RICO "requires that there must be a direct relationship between the injury asserted and the injurious conduct alleged." *Id.*

UW Defendants argue Plaintiff's alleged injury of pain and suffering are derivative of his original personal injury claim stemming from the departure from his job and therefore his RICO claims fail. (*Id.* at 7-8.) The Court agrees. Under *Reddy v. Litton*, 912 F.2d 291, 293 (9th Cir. 1990), plaintiffs lack standing if the alleged injury was caused by discharge from employment rather than by a pattern of racketeering activity. Further, even if Plaintiff were able to assert a claim based on the loss of his employment, Plaintiff was never an employee of UW and therefore he cannot show UW Defendants were the cause of his injury. Accordingly, the Court recommends Plaintiff's claims against UW Defendants be dismissed.

### D. Leave to Amend

Leave to amend a before trial should be "freely give[n] . . . when justice so requires." *Id.* Factors relevant to whether leave to amend should be granted are whether the moving party acted in bad faith or unduly delayed in seeking amendment, whether the opposing party would be prejudiced, whether an amendment would be futile, and whether the movant previously amended the pleading. *See, e.g. United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).The district court is afforded discretion to grant leave to amend pleadings and "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The generosity in granting leave to amend is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003).

Plaintiff asserts he should be granted leniency with his pleading because he is not an attorney. (Resp. at 3.) The Court is cognizant that leave to amend should be freely given. However, in this matter it appears leave to amend would be futile. Plaintiff's claims relate to alleged hostile work environment and wrongful termination from his former employer. The majority of his allegations concern misconduct by the Defendants associated with that employer. As discussed above, Plaintiff was never an employee of UW and thus even if he were able to allege new facts sufficient to assert a RICO claim, it seems unlikely that there are plausible allegations that the UW Defendants are the proximate cause of any injury to Plaintiff. Accordingly, the Court recommends Plaintiff's claims against UW Defendants be dismissed with prejudice.

### IV. CONCLUSION

The Court recommends Plaintiff's RICO claim against UW Defendants be dismissed with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **May 22, 2020**.

The Clerk is directed to send copies of this Report and Recommendation to the parties and to the Honorable Richard A. Jones.

Dated this 6th day of May, 2020.

MICHELLE L. PETERSON
United States Magistrate Judge