UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RUSSELL SMITHSON,<br><br>              Plaintiff,<br><br>     v.<br><br>SUZI PUCKETT, *et al*.,<br><br>              Defendants. | Case No. C19-1672-RAJ-MLP<br><br>REPORT AND RECOMMENDATION |

### I.   INTRODUCTION

This matter is before the Court on Defendants Suzi Puckett, Mark Sutton, and Deborah Shatos' (collectively, "Defendants") motion for summary judgment. (Mot. (Dkt. # 33).) Russell Smithson ("Plaintiff") did not submit a response and Defendants submitted a reply (Reply (dkt. # 38).) Having considered the parties' submissions, the balance of the record, and the governing law, the Court recommends Defendants' motion be GRANTED.

### II.   BACKGROUND

Plaintiff's allegations stem from his former employment with The Integrated Technologies Group, Inc. ("ITG"), owned by Defendants Suzi Puckett and Mark Sutton. ((Dkt. # 1-2 (Am. Compl.) at 1.) ITG installs low voltage telecommunications cabling on site at

businesses of customers, one of which is the University of Washington ("UW"). (Sutton Decl. (Dkt. # 36) at ¶ 3.) ITG hired Plaintiff in March 2018 for the combined position of administrative assistant/project assistant. (*Id.* at ¶ 6.) In his administrative role, Plaintiff reported to an administrative specialist, Defendant Deborah Shatos, and in his project assistant role he reported to Vice President of Operations Josh Tokarsyck. (Shatos Decl. (Dkt. # 35) at ¶¶ 2, 4.)

On July 30, 2018, Ms. Shatos and Mr. Tokarsyck gave Plaintiff a 90-day performance review during which they identified areas for improvement. (*Id.* at ¶ 7.) Specifically, he needed to improve his verbal and written communications, accuracy, and job knowledge. (*Id.*) Otherwise, Plaintiff performed his job satisfactorily. (*Id.*)

The evening of his performance review, Plaintiff emailed Ms. Shatos with the following complaints: (a) he claimed that an ITG employee made a transphobic comment on a worksite approximately three months prior; (b) he claimed that Ms. Puckett told him her son had "girls lined up out the door" in high school, which he interpreted as a homophobic comment directed at him; and (c) he felt discriminated against due to not being allowed to work a 4x10s schedule. (*Id.* at ¶ 8.)[1] The following day, Ms. Shatos and Defendant Mark Sutton met with Plaintiff regarding his email, and Plaintiff completed a complaint form. (*Id.* at ¶ 9.) Mr. Sutton conducted an investigation into the transphobic comment that included speaking with the employee who allegedly made the comment and interviewing a contractor who was present at the time it was allegedly made. (Sutton Decl. at ¶ 10) Mr. Sutton could not substantiate the claim but informed Plaintiff of the result and suggested additional diversity training to ITG employees. (*Id* at ¶ 11.) Plaintiff appeared satisfied with the investigation. (*Id.*)

---

[1] A 4x10 working schedule is available to cable installers who work on location, not employees who work in ITG's office. (Shatos Decl. at ¶ 10.)

REPORT AND RECOMMENDATION - 2

On August 20, 2018, Plaintiff spoke with Ms. Shatos about giving 30 days' notice of his resignation because he felt he was not being successful at ITG, and that the distance from his significant other who lived in Oregon was difficult. (Shatos Decl. at ¶ 12.) Plaintiff did not submit a written resignation. (*Id.*)

On September 18, 2018, Plaintiff submitted notice of his "immediate resignation in protest of illegal practices." (*Id.* at ¶ 13, Ex. E.) In his email, Plaintiff alleged, *inter alia*, that ITG was not properly paying overtime to employees, employed children of a state worker in return for business, and sent "bogus" checks to a Wilmington Delaware P.O. Box to evade taxes. (*Id.*)

After his resignation, Plaintiff filed a complaint for damages against Ms. Puckett, Mr. Sutton, and Ms. Shatos in Snohomish Superior Court. (Compl. (Dkt. # 2-1) at 26-28.) Plaintiff sought damages for pain and suffering from alleged negligence and hostile work environment. (*Id.* at 28.) Plaintiff subsequently filed an amended complaint for "RICO Civil Damages," adding Defendants Ric Aguilar and the University of Washington.[2] (Am. Compl.) Plaintiff asserts the predicate offenses to his Racketeer influenced and Corrupt Organization Act ("RICO") complaint are mail fraud, wire fraud, bribery, and tax fraud.[3] (*Id.* at 1.)

Plaintiff alleges the Defendants engaged in a tax fraud scheme by sending checks made payable to fictious companies to a P.O. Box in Wilmington, Delaware, under the guise of payments for "business cards". (*Id.* at ¶¶4.1-4.6.) Plaintiff alleges these checks were fraudulent because no business cards were distributed to ITG's employees after the payments were made. (*Id.* at ¶ 4.3.)

---

[2] Plaintiff's amended complaint also named Defendants Katherine Weber and Carol Sharrow. (*See* Am. Compl.) These Defendants were dismissed from the case pursuant to CR 12(b)(6). (Dkt. # 2-1 at 185-86.)

[3] Plaintiff's amended complaint seeks damages for pain and suffering relating to his RICO claims, unlike his complaint which sought damages for pain and suffering due to negligence from the alleged hostile work environment. (*Compare* Compl. at 28 *with* Am. Compl. at 7.)

REPORT AND RECOMMENDATION - 3

Plaintiff also alleges ITG engaged in a quid pro quo scheme with Ric Aguilar from the University of Washington to employ his sons in exchange for UW contracts. (*Id.* at 2, ¶¶ 4.7-4.13.) Plaintiff alleges these contracts were not bid out properly to the public which gave ITG an unfair advantage (*Id.* at 2.) Plaintiff also alleges that for many of these contracts, ITG received project information before it became an official project. (*Id.*)

Plaintiff further alleges Ms. Shatos threatened and intimidated him when he informed her of these alleged schemes, and workplace harassment, which forced him to flee the state and ultimately attempt suicide by an intentional car accident. (*Id.* at 2, ¶¶ 4.15-4.16, 4.19.) Plaintiff's amended complaint seeks damages for pain and suffering, trebled pursuant to state RICO statutes and civil penalties pursuant to state RICO statutes made payable to the Snohomish County Anti-Criminal Profiteering Revolving Fund. (*Id.* at 7.)

Defendants removed this matter pursuant to federal question jurisdiction in October 2019. (Not. of Removal (Dkt. # 1).) On February 4, 2020, Defendants Ric Aguilar and the University of Washington filed a motion to dismiss. (Dkt. # 20.) The undersigned submitted a Report and Recommendation recommending granting the motion to dismiss with prejudice which the Honorable Richard A. Jones adopted. (Dkt. ## 28, 29.)

### III. DISCUSSION

#### A. Standard for Motions for Summary Judgment

On motions for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. *Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party must initially show the absence of a genuine issue of

material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). The opposing party must then show a genuine issue of fact for trial. *Matsushita Elect. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The opposing party must present probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.,* 952 F.2d 1551, 1558 (9th Cir. 1991).

Here Plaintiff has not opposed the instant motion for summary judgment, however, the Court will address the merits of Defendants' motion to determine if "the motion and supporting materials … show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

**B.    Failure to State a RICO claim against Defendants**

The Court previously addressed Plaintiff's RICO claims in Defendants UW and Aguilar's motion to dismiss, and found Plaintiff failed to state a claim. The same analysis applies to the instant motion.

RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). To state a claim under 18 U.S.C. 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as predicate acts) (5) causing injury to the plaintiff's business or property." *Just Film, Inc. v. Bouno*, 847 F.3d 1108, 1116 (9th Cir. 2017) (quoting *Living Designs, Inc. v. E.I. DuPont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)). The fifth element is RICO's "standing" requirement. *See Steele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994). The statutory standing requirement ensures that "RICO is not expanded to provide a 'federal cause of action and treble damages to every tort plaintiff.'" *Id.* (quoting *Oscar v. Univ. Students Co-op Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992) (en banc)). To prove injury to business or property, "plaintiffs must show proof of concrete financial loss, and not mere injury

to a valuable intangible property interest." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086-87 (9th Cir. 2002).

### 1. Standing

RICO confers standing only on a "person injured in his business or property by reason of a violation" of the statute. *See* 18 U.S.C. § 1964(c). Thus, a RICO plaintiff must be a "person" within the meaning of the statute, must claim an injury to "business or property," and must show that the defendants' RICO violation is the proximate cause of that injury. The Court will not recognize standing where a plaintiff merely alleges a loss of wages: "[O]ur approach does not create RICO liability for every loss of wages resulting from a personal injury." *Diaz v. Gates,* 420 F.3d 897, 900 (9th Cir. 2005).

The Court finds Plaintiff lacks standing to assert a RICO claim. Plaintiff's amended complaint asserts that he was forced to "resign in protest" from his employment due to threats and intimidation. From the face of the pleadings, Plaintiff does not allege injury to a business or property. Plaintiff's amended complaint seeks damages for pain and suffering, but does not assert damages relating to a business or property. (Am. Compl. at 7.) Accordingly, the Court recommends Plaintiff's amended complaint be dismissed for lack of standing.

### 2. Enterprise

An enterprise "is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette,* 452 U.S. 576, 583 (1981). The enterprise need not have any particular organizational structure separate from its members or beyond that which is necessary to carry out its chosen course of conduct: it simply must function as an on-going, continuing unit. *Odom v. Microsoft Corp.*, 486 F.3d 541, 551-52 (9th Cir. 2007). This element of a RICO claim does not sound in fraud and need not be

pled with particularity. (*Id.*) An enterprise that is not a legal entity is commonly known as an "association-in-fact" enterprise and does not require "any particular organizational structure, separate or otherwise." *Id.* at 551. To plead the existence of an association-in-fact enterprise, a plaintiff must allege (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle v. United States*, 556 U.S. 938, 946 (2009).

The Court finds Plaintiff does not allege that an enterprise existed with regard to Ms. Puckett, Mr. Sutton, or Ms. Shatos. Plaintiff generally alleges that ITG sent checks to a P.O. Box in Wilmington, Delaware, in an unlawful scheme to pay Ric Aguilar, but provides no evidence in support of this assertion. Defendants have provided evidence that the owner of the P.O. Box is Bank of America and that ITG sent checks to this box to pay its Alaska Airlines business credit cards. (Sutton Decl. at ¶ 13, Exs. E, F; Shatos Decl. at ¶¶ 14.) Specifically, Defendants have provided declarations regarding these payments, copies of the checks at issue, and the corresponding credit card bill. (*Id.*) Per Bank of America's instruction, payments are payable to "Business Card" at PO Box 15796, Wilmington, DE 19886-5796. (Sutton Decl., Ex E at 10.) Based on this evidence, no enterprise existed.

Defendants show that as part of Plaintiff's job duties at ITG, he was in receipt of email confirmations for these payments that showed they were payments to "Business Card." (*Id.* at ¶ 13.) Thus, it appears the basis of Plaintiff's allegation is that he saw these payments, knew no business cards had been distributed, and therefore believes ITG engaged in unlawful conduct. However, Plaintiff's general allegations or beliefs are not enough to establish an enterprise, especially in light of the evidence.

Plaintiff's claim that Defendants hired Ric Aguilar's sons in a quid pro quo scheme for contracts also fails to establish an enterprise. Per the University of Washington's Telecommunications Cabling Materials, Pathway Materials and Services Master Contract Number CW2229792, work orders in excess of $100,000 are required to be put out for competitive bid to contract recipients. (Sutton Decl. at ¶ 15.) These work orders can also be offered to pre-approved vendors, which includes ITG. (*Id.*, Ex. G.) The work orders ITG received from UW as a pre-approved vendor, and thus without having to competitively bid for, were under $100,000. (*Id.*) Thus, Plaintiff has failed to allege an enterprise with regard to this claim. Further, even if Plaintiff's allegation were sufficient to allege Defendants were part of an enterprise, his claims still fail due to lack of standing.

### 3. Predicate Acts

A "pattern of racketeering activity" requires at least two acts of racketeering activity, commonly referred to as predicate acts. *See* 18 U.S.C. § 1961(5). To constitute a "pattern" the predicate acts must be "related" and "continuous." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239 (1989). The requirement that the predicate acts be "related" means that "they share similar purposes, participants, victims, methods, or other distinguishing characteristics; in short they must not be isolated or sporadic." *See Howard v. Am. Online, Inc.,* 208 F.3d 741, 749 (9th Cir. 2000). Where predicate acts are based in fraud, they must be pleaded with particularity. *Odom*, 486 F.3d at 553-54; *see also* Fed. R. Civ. P. 9(b). RICO recognizes mail fraud and wire fraud, among other acts, to be "racketeering activity." *See* 18 U.S.C. § 1961(1)(B). The elements of mail fraud and wire fraud include "(1) a scheme or an artifice to defraud; (2) use of the U.S. mails or wires in furtherance of the said scheme; and (3) use of the mails or wires with the

specific intent to deceive or defraud." *ITI Internet Services, Inc. v. Solana Capital Partners, Inc.*, 2006 WL 1789029 *8 (W.D. Wash. June 27, 2006).

As discussed above, Plaintiff has failed to allege the Defendants engaged in any enterprise or scheme. Given the evidence presented by Defendants, and that Plaintiff has provided nothing more than general allegations, the Court finds Plaintiff failed to establish Defendants engaged in any predicate acts, let alone any "related" and "continuous" acts.

        *4.*     *Proximate Cause*

To maintain a cause of action under RICO, "a plaintiff must show not only that the defendant's violation was a 'but for' cause of his injury, but that it was the proximate cause as well." *Pillsbury, Madison & Sutro v. Lerner,* 31 F.3d 924, 928 (9th Cir. 1994). Proximate causation under RICO "requires that there must be a direct relationship between the injury asserted and the injurious conduct alleged." *Id.*

Plaintiff's alleged injury of pain and suffering are derivative of his original personal injury claim stemming from the departure from his job and therefore his RICO claims fail. Under *Reddy v. Litton*, 912 F.2d 291, 293 (9th Cir. 1990), plaintiffs lack standing if the alleged injury was caused by discharge from employment rather than by a pattern of racketeering activity. Accordingly, the Court recommends Plaintiff's claims against Defendants be dismissed.

    **C.**    **Employment Claims**

Although not clear, Plaintiff's amended complaint asserts an employment-related claim. Plaintiff alleges Ms. Shatos threatened and intimidated him into silence when he revealed the alleged fraudulent schemes of ITG. (Am. Compl. at 1.) He alleges this intimidation forced him to leave ITG, flee the state, and attempt suicide. (*Id.* at ¶¶ 4.15-4.19.) The Court construes this as a constructive discharge claim.

The elements of a claim of constructive discharge are that (1) the employer deliberately made working conditions intolerable, (2) a reasonable person in the employee's position would be forced to resign, (3) the employee resigned because of the intolerable condition and not for any other reason, and (4) the employee suffered damages as a result of being forced to resign. *Barnett v. Sequim Valley Ranch, LLC*, 174 Wn. App. 475, 489 (2013).

Generally, whether working conditions have risen to an "intolerable" level is a question for the trier of fact, unless there is no competent evidence to establish a claim of constructive discharge. *See Haubry v. Snow*, 106 Wn. App. 666, 677 (2001) (citing *Sneed v. Barna,* 80 Wn. App. 843, 849 (1996)). The "intolerable" element can be shown by aggravated circumstances or a pattern of conduct. *Sneed*, 80 Wn. App. at 850.

Here, the only allegations that Ms. Shatos deliberately made Plaintiff's working conditions intolerable, or that the conditions even rose to the level of intolerable, are that she threatened and intimidated him to keep him silent about the alleged illegal schemes. Plaintiff provides no evidence in support of these allegations. Further, he alleges no details or examples of this conduct that shows it is aggravating or demonstrates a pattern. Defendants submitted evidence denying these allegations and showing cordial and professional communications between Ms. Shatos and Plaintiff up until he resigned from ITG. (Shatos Decl. at ¶ 16.)

Further, the "schemes" that Ms. Shatos allegedly silenced Plaintiff for were ITG's payment of its business credit cards and receipt of UW contracts as a pre-approved vendor. Although Plaintiff may have subjectively believed something more nefarious was occurring, a

reasonable person would not be forced to resign based on reporting ITG's conduct. Because Plaintiff failed to establish these elements, his constructive discharge claim fails.[4]

### D. Leave to Amend

Leave to amend a before trial should be "freely give[n] . . . when justice so requires." *Id*. Factors relevant to whether leave to amend should be granted are whether the moving party acted in bad faith or unduly delayed in seeking amendment, whether the opposing party would be prejudiced, whether an amendment would be futile, and whether the movant previously amended the pleading. *See, e.g. United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). The district court is afforded discretion to grant leave to amend pleadings and "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The generosity in granting leave to amend is "to be applied with extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003).

Plaintiff should be denied leave to amend. Plaintiff's claims relate to alleged hostile work environment and wrongful termination from ITG. It therefore would be futile to allow him to amend his RICO claims because he lacks standing. Plaintiff's constructive discharge claim is based on telling his supervisor about ITG's alleged schemes. Because a reasonable person would not be forced to resign based on reporting these "schemes," leave to amend would be futile. Lastly, Plaintiff failed to oppose this instant motion.

### E. Errata

Defendants filed an errata (dkt. # 37) containing true and correct copies of Exhibit E and F to the Sutton Declaration that contain redactions erroneously omitted in the prior set of exhibits

---

[4] Plaintiff asserts his separation from ITG caused him to attempt to commit suicide due to financial hardship. (Am. Compl. at ¶¶ 4.18-4.19.) While Plaintiff may have been able to seek damages for emotional distress based on these allegations, the underlying cause of action of constructive discharge is dismissed.

filed. Defendants ask the Court to replace the attached redacted exhibits with the unredacted exhibits in the Sutton Declaration (dkt. # 36). Because the exhibits are not filed separately from the declaration and other exhibits, the Court will direct the Clerk of the Court to seal the entirety of Dkt # 36 and direct the parties to file the Sutton Declaration with the redacted exhibits.

## IV.    CONCLUSION

The Court recommends Defendants' motion for summary judgment (dkt. # 33) be GRANTED and this matter be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **October 16, 2020**.

The Clerk of the Court is directed to seal Dkt. # 36. Defendants are directed to file the Sutton Declaration with the redacted exhibits. The Clerk is also directed to send copies of this Report and Recommendation to the parties and to the Honorable Richard A. Jones.

Dated this 30th day of September, 2020.

_____
MICHELLE L. PETERSON
United States Magistrate Judge